**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,       )
                                 )
                                 )
        vs.                 )      Criminal No. 04-109
                                 )      Judge Arthur J. Schwab
TERRANCE LARNELL COLE,       )
                                 )
           Defendant.     )

**MEMORANDUM ORDER DENYING DEFENDANT'S MOTION AND
SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE UNDER
18 U.S.C. § 3582(c)(1)(A) (doc. 354 and doc. 370)**

Pending before the Court is Defendant Terrance Cole's ("Defendant" or "Cole") Motion
for Reduced Sentence pursuant to Section 404 of the First Step Act, his Supplemental Motion for
Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) ("Defendant's Compassionate Release
Motions"), (doc. 354 and doc. 370), the Government's Response in Opposition (doc. 363, doc.
369, and doc. 374), and Defendant's Reply and Notices of Supplemental Information thereto
(doc. 375, doc. 376, and doc. 377).   For the following reasons, and after careful consideration,
Defendant's Motion and Supplemental Motion will be DENIED.

*I.*      *Introduction and Procedural History*

On August 31, 2005, a jury found Defendant guilty of conspiracy to distribute and
possess with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C.
§§ 841 and 848 (count one), and conspiracy to launder monetary instruments in violation of 18
U.S.C. § 1956 (count two).   Doc. No. 198.   The guilty verdict was returned after a second trial in
this matter after the jury in the first trial was unable to reach a verdict.   Doc. No. 111.

Prior to sentencing, Defendant moved for a new trial and was denied.  Defendant was sentenced by then-District Judge Thomas M. Hardiman[1] to a term of life imprisonment at count one and a 20-year term at count two.  The denial of a new trial was affirmed by the United States Court of Appeals for the Third Circuit.  Doc. No. 281-2.

Defendant then filed a motion to vacate under 28 U.S.C. § 2255, claiming ineffective assistance of counsel.  Doc. No. 288.  This Court denied Defendant's motion to vacate and declined to issue a certificate of appealability.  Doc. No. 298.

Defendant appealed that decision to the Court of Appeals for the Third Circuit, which declined to issue a certificate of appealability, because he had not made a substantial showing that he was denied a constitutional right (such as the denial of effective assistance of counsel).  Doc. No. 309.

Defendant then filed a letter to the Court to "bring notice to the Court" of documents allegedly withheld from discovery.  Doc. No. 311.  Because the letter stated that Cole's only desire was to bring a "fraud" to the Court's attention, the Court issued a Memorandum Order acknowledging the filing of the notice.  Doc. No. 312.  Defendant then filed a "Notice and Preservation of Rights, *Bloate v. United States*, 103 S.Ct. 1345 (2010)," seeking relief under 28 U.S.C. § 2255.  Doc. No. 313.  The Court denied Cole's motion as a second, or successive petition under 28 U.S.C. § 2255.

Defendant filed a notice entitled "Preserve Issue of Newly Discovered Evidence" that attached no documents, nor described the evidence he sought to introduce, other than to state that it was "discovered on 7/6/2015."  Doc. No. 334.  Thereafter, he filed a Motion for Relief from

---

[1] Judge Hardiman was thereafter elevated to the United States Court of Appeals for the Third Circuit.

Judgment pursuant to Fed. R. Civ. P. 60(b), which was another attempt to litigate his claims of ineffective assistance of counsel.  Doc. No. 335.  The Court denied Cole's Motion as his claims were already decided by the Court, Doc. No. 298, and upheld by the Court of Appeals for the Third Circuit, when he was denied a certificate of appealability.  Doc. No. 309.

By Order of this Court of May 8, 2018, after Defendant had filed numerous meritless *pro se* motions, the Court held as follows:

> Cole's ceaseless efforts to re-litigate the issues that were long ago decided in his case, through *pro se* filings that are often difficult to understand if the relief sought can be established at all, are a waste of limited judicial resources.  Accordingly, the Clerk is hereby directed to refuse and reject for filing any future pleadings, motions, or documents received from Terrance Cole or anyone on his behalf in this case unless same are preauthorized by an Order of this Court.

Defendant filed an appeal of the immediately hereinabove Order, as well as the rulings on his most recent round of motions, and on October 18, 2018, the Court of Appeals for the Third Circuit summarily vacated this Court's prior Order prohibiting future filings without leave of Court, on the basis that the "filing injunction" failed to give notice and opportunity for Defendant to address why the injunctive Order should not issue.  Doc. 348.  The Court of Appeals affirmed the rulings of this Court on the motions, however.  Prior to the filing of the Instant Motions, since October 18, 2018, there has been no docket activity since that time.

On April 7, 2021, Defendant filed a motion to appoint counsel.  Counsel was thereafter appointed, and on July 14, 2021, a counseled Motion to Reduce Sentence pursuant to the First Step Act was filed on Defendant's behalf.

On August 9, 2021, the Government filed its Response in Opposition to the original Motion (doc. 363), and while the Motion was still pending, Defendant filed an unopposed

request to file a Supplemental Motion to Reduce Sentence on September 1, 2021, which was granted by this Court (doc. 367 and doc. 368).

On September 13, 2021, Defendant filed the instant Supplemental Motion for Release/Reduced Sentence pursuant CARES and/or First Step Act (doc. 370), on October 19, 2021, the Government filed its Opposition thereto (doc. 374), and on November 2, 2021, Defendant filed a Reply (without seeking leave of Court to do so).  In the ensuing months while the instant Motions have been pending, Defendant has filed two more "Notices" of Supplemental Information, without first seeking leave of Court (doc. 366 and doc. 367).  The Court notes that it has accepted Defendant's counseled Motions, Supplements, and Notices, and has declined to issue a further Rule to Show Cause Order, at this juncture.

Defendant, who is approximately 53 years of age, was confined at the USP - Atlanta at the time of the original Motion for Compassionate Release, and he is currently confined at FCI Coleman, to a sentence of life imprisonment.[2]   The instant Motions are ripe for review.

II.      *Standard of Review*

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."  *McMillan v. U.S.*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (stating, "[a] federal court generally may not modify a term of imprisonment once it has been imposed.").  One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

---

[2]*See* https://www.bop.gov/inmateloc/ (last visited 4/8/2022).

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)      extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

As explained by the United States Court of Appeals for the Third Circuit in *United States v. Badini*, 839 Fed. App'x 678 (3d Cir. Mar. 11, 2021):

> The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*. § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id*. § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason," for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.

. . .

(ii) The defendant is

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.  Notably, the Court of Appeals for the Third Circuit recently held that: "The policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'."  *U.S. v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *U.S. v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

It is the defendant who bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A). *U.S. v. Grasha*, Crim. No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a defendant may file a Section 3582(c)(1)(A) motion with the Court.  As explained by the Court of Appeals for the Third Circuit in *U.S. v. Harris,* 812 Fed. App'x. 106 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the defendant may file the motion [for compassionate release pursuant

to Section 3582(c)(1)(A)] thirty days after the warden receives his request." *Harris,* 812 Fed. App'x. at 107.

### III.     *Discussion*

In Defendant's Motion and Supplemental Motion, he seeks a sentence reduction from his current sentence of life imprisonment, to a sentence of time served with a period of home confinement.  In support thereof, Defendant advances several arguments, namely that his "advanced age" (53), African-American heritage, medical conditions (hypertension, obesity, and asthma), other chronic health problems (malignant neoplasm, hyperlipidemia, and glaucoma), combined with the conditions at the prisons where he is (and was) housed, in the context of the pandemic, place him at a higher risk of developing severe complications from COVID-19, at least as that risk existed in the summer/fall of 2021, when these Motions were originally filed. Defendant contends that the above factors constitute extraordinary and compelling reasons to justify his release.  Defendant further argues that the Section 3553(a) factors compel his release, because he has a low likelihood of recidivism, and he has displayed exemplary behavior while incarcerated.  Finally, Defendant contends that the sentencing court exceeded its authority to sentence him to the statutory maximum of life imprisonment, a fact which this Court may consider at this stage of the proceedings, citing to *Alleyne v. United States,* 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The Government opposes Defendant's Compassionate Release Motion and his Supplement.  In both the original Response and in its Supplemental Response, the Government accepts the possibility that Defendant's hypertension as well as his asthma, and his obesity, which has been confirmed by his medical records, may be medical conditions that place the Defendant at a higher risk of severe illness or death if he were to contract COVID-19.  However,

the Government contends that to allow Defendant to be released from prison when he has served

less than 20 years of a life sentence, would undermine the sentencing factors enumerated in

Section 3553(a).  Additionally, the Government argues in its original Response that because

Defendant had refused the vaccine, he essentially was not engaging in self-care, which further

undercut his argument that there are extraordinary and compelling reasons justifying his release.

Defendant has since been fully vaccinated, as of September 9, 2021, and in the Government's

Response to the Supplemental Motion, it contends that the prevailing scientific view is that

vaccination makes the likelihood of severe disease or death much lower. Also, the Government

counters that Defendant's argument is a misapplication of *Alleyne* and *Apprendi*.

### A.   *Defendant Has Sufficiently Exhausted His Administrative Remedies*

In his original Compassionate Release Motion, Defendant attaches two exhibits which

evidence that he filed a request for compassionate release on October 20, 2020, and again

requested relief, and his request was denied by the Warden on March 2, 2021.  See Doc. 354-1

and 2.  Accordingly, the parties agree that he has exhausted his administrative remedies and the

Motions are therefore ripe for review.

### B.   *Merits Analysis of Defendant's Compassionate Release Motions*

Having reviewed the merits of Defendant's Compassionate Release Motion and his

Supplemental Motion (and Supplements), Defendant's request for relief will be denied because:

(1) Defendant has not established by a preponderance of the evidence that an extraordinary and

compelling reason exists for his term of life-imprisonment to be reduced to time served/home

confinement; (2) that the Sentencing Court did not improperly sentence Defendant to a term of

life imprisonment based upon facts that were not established before the jury; and (3) Defendant's

release would not be appropriate upon consideration of the factors set forth in 18 U.S.C. § 3553.

8

1. *Defendant has not established an extraordinary and compelling reason under Section 3582(c)(1)(A) to reduce his term of incarceration to time served/home confinement.*

The reasons Defendant asserts in support of his Compassionate Release Motions, either alone or in combination, are not extraordinary and compelling reasons for his sentence to be reduced to time served/home confinement.

Defendant is a vaccinated[3] African-American man of "advanced age," who suffers from hypertension, obesity, asthma, hyperlipidemia (and other ailments), and the Court agrees with the Government that these conditions may place him at a higher risk of contracting COVID-19, and having more severe complications.   The Courts, following CDC guidance, have found that hypertension only "might" or "possibly" present a risk of severe infection.  See, e.g., *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("commonplace" conditions of hypertension and hyperlipidemia are not extraordinary); *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (same); *United States v. Nesbitt*, 2020 WL 3412577, at *4 (E.D. Pa. June 22, 2020) (Bartle, J.) (ordinary hypertension does not justify release); *United States v. Daniels*, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (Schiller, J.) (same); *United States v. Tartaglione*, 2020 WL 3969778, at *6 (E.D. Pa. July 14, 2020) (Slomsky, J.) (hypertension and hyperthyroidism, if presented by 64-year-old, "are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19."); *United States v. Martines*, 2021 WL 427285, at *2 (E.D. Pa.

_____

[3] At the time of the filing of the original Motion for Compassionate Release, Defendant was unvaccinated, having declined to be administered the Pfizer vaccine.  However, Defendant is now, in fact, vaccinated, having received his second vaccination in September of 2021.

Feb. 8, 2021) (Kearney, J.) (hypertension of 67-year-old is not a sufficient risk factor); *United States v. Williams*, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020) (Pratter, J.) ("Although the CDC recognizes that having certain other conditions, including hypertension or high blood pressure 'might be at an increased risk,' hypertension is not considered high risk at this time."); *United States v. Ackerman,* 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (Marston, J.) ("Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.") (citing cases); *United States v. Syed*, 2020 WL 5995053, at *5 (M.D. Tenn. Oct. 9, 2020) (Richardson, J.) (even after six months the CDC continues to state that hypertension only "might" present a risk; the court therefore "concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release."); *United States v. Thomas*, 2020 WL 3895781, at *3 (W.D. Va. July 10, 2020) (Urbanski, J.) ("During the pandemic, courts in this district and across the country have released individuals suffering from hypertension, but only when these individuals also suffered from other underlying medical conditions."); *United States v. Colbert*, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (Cleland, J.) ("Hypertension, a condition that affects about 46% of the U.S. adult population, high cholesterol, and having had prostate cancer in the past are not 'extraordinary and compelling' conditions.").

The Court finds that Defendant's medical conditions, even when combined with other health conditions, his age, his African-American descent, and his current vaccination status, either alone or in combination, do not constitute an extraordinary and compelling reason for release.

First, given that Defendant is fully vaccinated, Defendant has not sufficiently established that this puts him at risk of severe illness or death if he contracts COVID-19 while incarcerated. The CDC explains that people are considered to be fully vaccinated two weeks after they have received the second dose in a 2-dose series. *See* Guidance for Fully Vaccinated People, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated November 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.   In addition, "[p]eople who get vaccine breakthrough infections . . . are less likely than unvaccinated people to be hospitalized or die."  *Id.*  Thus, while the "COVID-19 situation is always-changing and . . . it is unclear how emerging COVID-19 variants will alter vaccine efficacy over time," as of now, the CDC indicates that the Defendant has significant protection against serious illness due to his vaccination.  *U.S. v. Hannigan*, Crim. No. 19-373, 2021 WL 1599707, at *5 (E.D. Pa. April 22, 2021).  *See also U.S. v. Singh*, 525 F.Supp.3d 543, 547 (M.D. Pa. 2021) (concluding, "[Defendant's] recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with [Defendant's] underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release."); *U.S. v. Ballenger*,  Crim. No. 16-5535, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) (finding "[a]t this time, because [Defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

Second, as of the date of this Memorandum Order, at FCI Coleman, where Defendant is currently housed, the modification/threat level is at the lowest level (a Level 1 - Green), meaning that the medical isolation rate is less than 2% of the population, the vaccination rate is greater than 65%,  and the community transmission rate is less than 50 per 100,000.00 over the last 7

days.[4]  While, tragically, there have been five (5) inmate deaths and one (1) staff death at FCI

Coleman-Medium from COVID-19,[5] it is significant that at this time, there are only three (3)

current infections, with over 344 inmates recovered.  Additionally, to date, 5263 inmates and 846

staff at FCI Coleman are fully vaccinated.  *See U.S. v. Somerville*, 463 F.Supp.3d 585, 597-98

(W.D. Pa. 2020) ( "a prisoner seeking release due to COVID-19 must at least show . . . an actual,

non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held").  While

the conditions at the prison warranted extreme quarantine measures when Defendant was

transferred to FCI Coleman on July 30, 2021, during the "Delta" variant wave of infections,

those restrictive conditions have since abated, and vaccination rates have substantially risen from

50% percent of staff being vaccinated, to now over 65% percent of staff and inmates being

vaccinated.

> 2. *The sentence of life imprisonment does not trigger the collective requirements of Alleyne and Apprendi, such that extraordinary and compelling reasons and/or Section 3553 factors compel a sentencing reduction.*

In Defendant's Supplemental Motion, he advances an additional novel argument, that the

District Court had erred in determining drug quantities which were not set forth in the

Indictment, nor were they found by the jury, and instead were determined in the Presentence

Investigation Report, thus triggering the collective requirements of *Alleyne and Apprendi.*

In *Alleyne* and *Apprendi,* the Supreme Court of the United States determined that any fact

that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury and proved beyond a reasonable doubt.  *Alleyne* at 99.  *Apprendi* at 435.

---

[4] *See* https://www.bop.gov/coronavirus/ (last visited 4/8/22).
[5] *Id.*

Defendant posits that because he was charged and found guilty of a drug quantity of five (5) kilograms or more of cocaine, yet he was sentenced based upon a drug quantity of 150 kilograms, he was unlawfully exposed to an enhanced penalty of life imprisonment, and that this Court may consider this factor as an extraordinary and compelling reason justifying his release to time served, and/or a factor compelling his release under Section 3553(a).  Defendant is essentially asserting that there were facts that were considered by the Sentencing Court in this case that increased the maximum penalty, or at a minimum, this should be a factor in mitigation. This Court disagrees.  Instead, the sentencing judge in our case exercised his own discretion and sentenced Defendant within the statutory limits of the crime for which he was charged.

Defendant cites *Dillon v. United States,* 560 U.S. 817 (2010), for the premise that proceedings under Section 3582(c)(2) do not implicate a Defendant's Sixth Amendment right to have facts found by a jury beyond a reasonable doubt, but this Court agrees with the Government that the *Dillon* case weighs in favor of Defendant's continued incarceration.

Defendant further cites *United States v. Pride*, a district court decision from the Western District of Virginia, 2019 WL 2435685 (W.D. Va. 2019), wherein a motion for reduction of sentence was considered after enhanced drug quantities found in the Presentence Report were also relied upon by the district court in sentencing a defendant to enhanced penalties, which were not found by a jury.  The Court in *Pride*, differentiating the principles in *Alleyne* and *Apprendi*, which found that retroactivity is not subject to collateral review, concluded that the applicability of the First Step should not be defined under facts found in the Presentence Report, which were not found by a jury, relating to drug quantity.

Both the facts and legal circumstances in *Pride* are distinguishable from this case.  Again, in the present case, Defendant was charged with and convicted of a crime, conspiracy to

distribute five (5) kilograms or more of cocaine, for which the authorized statutory maximum penalty was life imprisonment.  In contrast to the situation in *Pride,* the First Step Act did not alter the statutory maximum Defendant was exposed to, nor did it change the drug quantity that triggered this possible sentence. The collective requirements of *Alleyne* and *Apprendi* were therefore not triggered, because the Sentencing Court here did not consider facts that increased the penalty for a crime beyond the prescribed statutory maximums and minimums. While Defendant is correct that the Sentencing Court found (through the Presentence Report) that Defendant was responsible for more than 150 kilograms of cocaine, the prescribed statutory maximum was not altered by this determination, nor was it altered by either the 2010 FSA or the 2018 FSA.

Defendant further cites *United States v. Ballinger*, 2019 WL 3292156 (E.D. Tenn. 2019), another district court holding, for the proposition that this Court has discretion to consider the initial prejudice and improper reliance on the Presentence Report to establish drug quantities of over 150 kilograms more than Defendant was charged with or convicted of to justify a life sentence, as an additional extraordinary and compelling reason for compassionate release, or alternatively, as a factor pursuant to Section 3553(a).  The Court will does not find *Ballinger* to be persuasive, under the facts of this case.

In summary, the Government explains, and this Court agrees, that Defendant's argument is a misapplication of *Alleyne* and *Apprendi*, and is distinguishable from the cases cited by Defendant in his brief, because Defendant was subject to a statutory maximum of life imprisonment when he was originally sentenced, and the First Step Act did not alter that statutory maximum penalty, or the drug quantity that exposed Defendant to the maximum

penalty.  This Court also finds the cases cited by Defendant to be inapplicable to the present case.

3.   *A sentencing reduction in this case would not be consistent with the applicable factors set forth in 18 U.S.C. § 3553(a)*

Most significantly, reviewing the applicable Section 3553(a) factors to determine if a reduction in sentence pursuant to Section 3582(c)(1)(A) is appropriate in this case, the Court finds that granting Defendant's request for a sentence reduction pursuant to Section 3582(c)(1)(A) is not warranted at this time, due to: (1) the serious nature and circumstances of Defendant's offense; (2) the need to protect the public from further crimes of Defendant; and (3) the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C.§ 3553(a).

Although this Court did not preside over the criminal trials of Defendant, the Court is well familiar with the facts of this case, which also have been summarized by the Government as follows.  Defendant was the leader of a large-scale cocaine trafficking organization in Western Pennsylvania, which operated from 1991 through the middle of 2003.  This organization was responsible for the distribution of at least 3000 kilograms of cocaine, which was transported to Pittsburgh from New York and California, by means of hidden compartments in cars driven from New York to Monroeville and Hazelwood, Pennsylvania.  Defendant retained portions of the shipments and then distributed to his top assistants, and then to his brokers.  The wholesale value of the 3000 kilograms was an astonishing value of approximately $60 million.

Suffice it to say, Defendant distributed drugs through a vast network, thus, negatively impacting countless lives here in the Western District of Pennsylvania, and elsewhere, a fact also found by the Sentencing Court.  During the trials, lower ranking members of the drug conspiracy

testified against Defendant.  There was also testimony that Defendant attempted to intimidate witnesses not to cooperate against him, that Defendant had a reputation for violence, and that he laundered his profits through trips to Las Vegas and Atlantic City casinos.  Defendant was a drug kingpin for more than a decade, and the trials evidenced, in graphic detail, the extent of his criminal conduct and culpability.  Simply put, the magnitude of the offenses, enhances the need to punish and the need to deter, as the Government emphasizes, and this Court agrees, Defendant's reprehensible criminal conduct has left the streets of Western Pennsylvania awash in drugs.

Although Defendant points out that his assessed BOP recidivism score is the lowest that can be achieved, and only 16 % of inmates achieve this reduced score (doc. 376), this factor, while encouraging and commendable, does not warrant a reduction in sentence at this juncture, because he has served less than 20 years of a life sentence.  Additionally, while the Court is genuinely pleased that Defendant has taken part in extensive efforts to rehabilitate himself, that factor also does not necessitate release at this time, because rehabilitation is expected of all individuals who are sentenced before this Court.  A careful consideration of the balance of the Section 3553(a) factors compels the result here - - that Defendant may not be released from prison at this juncture, because it would not be a just punishment.

*IV. Conclusion*

For all of the above stated reasons, Defendant's Motion and Supplemental Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (doc. 354 and doc. 370) is DENIED.

SO ORDERED this 9th day of April, 2022.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All ECF Registered Counsel of Record

17