IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Criminal No. 04-109 |
| | ) | Judge Arthur J. Schwab |
| TERRANCE LARNELL COLE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER DENYING DEFENDANT'S (SECOND) MOTION FOR COMPASSIONATE RELEASE UNDER
18 U.S.C. § 3582(c)(1)(A) AND U.S.S.G. § 1B1.13 (Doc. 412)**

Pending before the Court is Defendant Terrance Cole's ("Defendant" or "Cole") (Second) (counseled) Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines (Amendment 814) ("Defendant's Compassionate Release Motion"), Doc. 412, the Government's Response in Opposition, Doc. 419, Defendant's Reply, Doc. 425, and Supplemental Affidavit, Doc. 426.  For the following reasons, and after careful consideration, Defendant's Motion will be DENIED.

*I.     Introduction and Procedural History*

On August 31, 2005, a jury found Defendant guilty of conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 848 (count one), and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956 (count two).  Doc. 198.  The guilty verdict was returned after a second trial in this matter after the jury in the first trial was unable to reach a verdict.  Doc. 111.

Prior to sentencing, Defendant moved for a new trial and was denied. Defendant was sentenced by then-District Judge Thomas M. Hardiman[1] to a term of life imprisonment at count one and a 20-year term at count two. The denial of a new trial was affirmed by the United States Court of Appeals for the Third Circuit. Doc. 281-2.

Defendant then filed a motion to vacate under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. Doc. 288. This Court denied Defendant's motion to vacate and declined to issue a certificate of appealability. Doc. 298.

Defendant appealed that decision to the Court of Appeals for the Third Circuit, which declined to issue a certificate of appealability, because he had not made a substantial showing that he was denied a constitutional right (such as the denial of effective assistance of counsel). Doc. 309.

Defendant then filed a letter to the Court to "bring notice to the Court" of documents allegedly withheld from discovery. Doc. 311. Because the letter stated that Cole's only desire was to bring a "fraud" to the Court's attention, the Court issued a Memorandum Order acknowledging the filing of the notice. Doc. 312. Defendant then filed a "Notice and Preservation of Rights, *Bloate v. United States*, 103 S.Ct. 1345 (2010)," seeking relief under 28 U.S.C. § 2255. Doc. 313. The Court denied Cole's motion as a second, or successive petition under 28 U.S.C. § 2255.

Defendant filed a notice entitled "Preserve Issue of Newly Discovered Evidence" that attached no documents, nor described the evidence he sought to introduce, other than to state that it was "discovered on 7/6/2015." Doc. 334. Thereafter, he filed a Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b), which was another attempt to litigate his claims of

---

[1] Judge Hardiman was thereafter elevated to the United States Court of Appeals for the Third Circuit.

ineffective assistance of counsel. Doc. 335. The Court denied Defendant's Motion as his claims were already decided by the Court, Doc. 298, and upheld by the Court of Appeals for the Third Circuit, when he was denied a certificate of appealability. Doc. 309.

By Order of this Court of May 8, 2018, after Defendant had filed numerous meritless *pro se* motions, the Court held as follows:

> Cole's ceaseless efforts to re-litigate the issues that were long ago decided in his case, through *pro se* filings that are often difficult to understand if the relief sought can be established at all, are a waste of limited judicial resources. Accordingly, the Clerk is hereby directed to refuse and reject for filing any future pleadings, motions, or documents received from Terrance Cole or anyone on his behalf in this case unless same are preauthorized by an Order of this Court.

Doc. 344.

Defendant filed an appeal of the immediately hereinabove Order, as well as the rulings on his most recent round of motions, and on October 18, 2018, the Court of Appeals for the Third Circuit summarily vacated this Court's prior Order prohibiting future filings without leave of Court, on the basis that the "filing injunction" failed to give notice and opportunity for Defendant to address why the injunctive Order should not issue. Doc. 348. The Court of Appeals affirmed the rulings of this Court on the motions, however.

Defendant filed his first round of Motions to Reduce Sentence/for Compassionate Release, which were counseled on July 14, 2021, and September 13, 2021. The Government opposed said Motions and the Court issued a Memorandum Order denying Defendant's Motions on April 9, 2022. Doc. 378. On September 22, 2022, the United States Court of Appeals for the Third Circuit summarily affirmed this Court's Memorandum Order denying Defendant's Motions for Compassionate Release. Doc. 392. Then, on July 25, 2023, Defendant filed a *Pro Se* Motion for Compassionate Release, which this Court denied without prejudice for his counsel to file a supplemental motion thereon. Doc. 393.

After the appointment of counsel, and several extensions, and status reports ordered by the Court, on June 3, 2024, Defendant, through his counsel, filed the instant (Second) Motion for Compassionate Release. Doc. 412.  On June 24, 2024, the Government filed its Response in Opposition.  Doc. 419.  Defendant filed his Reply thereto, after first seeking Leave of Court to do so, on July 29, 2024.  Doc. 425.  Defendant filed an Affidavit (referenced in the Reply) on August 3, 2024, in which he addresses and disputes the allegations by the Government that he stopped taking his blood pressure medication.  Doc. 426.

Defendant, who is approximately 57 years of age, is currently confined at FCI Coleman, a medium security prison, in Sumterville, Florida, to a sentence of life imprisonment.[2]  The instant Motion is ripe for review.

II. *Standard of Review*

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. U.S.*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (stating, "[a] federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

---

[2] *See* https://www.bop.gov/inmateloc/ (last visited 8/7/2024).

unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

As explained by the United States Court of Appeals for the Third Circuit in *United States v. Badini*, 839 Fed. App'x 678 (3d Cir. Mar. 11, 2021):

> The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason," for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

> (b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
> (1) Medical Circumstances of the Defendant.—
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. The

5

defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (B) The defendant is—
    (i) suffering from a serious physical or medical condition,
    (ii) suffering from a serious functional or cognitive impairment, or
    (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

    (D) The defendant presents the following circumstances

    — (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii) such risk cannot be adequately mitigated in a timely manner.

(2) Age of the Defendant.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) Family Circumstances of the Defendant.—

. . ..

(4) Victim of Abuse.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions);
that was committed by, or at the direction of, a correctional officer, an

employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

**(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).**

**(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.**

U.S.S.G. § 1B1.13, cmt. n.1.  (Emphasis added).

Notably, the Court of Appeals for the Third Circuit has held that: "The policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In *United States v. Higinio-Castillo*, 2024 WL 453608, *2-3 (E.D. Pa. February 6, 2024), the United States District Court for the Eastern District of Pennsylvania accurately summaries the current state of the law in this Circuit with regard to Amendment 814:

> As amended by the First Step Act of 2018, 18 U.S.C. Section 3582(c)(1)(A) authorizes defendants to file a motion for compassionate relief after exhausting the Bureau of Prisons' administrative processes.  A court may grant a motion for a sentence reduction if the court determines that (1) 'extraordinary and compelling reasons' warrant the reduction; (2) such a reduction is consistent with applicable policy statements issued by the

7

Sentencing Commission; and (3) the reduction is supported by the traditional sentencing factors under 18 U.S.C. Section 3553(a), to the extent they are applicable.

One year after Congress passed the First Step Act, however, the U.S. Sentencing lost its quorum to amend the compassionate release policy statement (U.S.S.G. Section 1B1.13) to reflect the First Step Act's provision that a defendant was not authorized to file their own motion for compassionate release.  Courts, including the Third Circuit, thus held that the Commission's policy statement regarding defendant-filed motions for sentencing reduction under compassionate release was advisory, not binding.

This changed in April 2023, when the Sentencing Commission promulgated new amendments to the Sentencing Guidelines.  Amendment 814 to the Sentencing Guidelines now revises U.S.S.G. Section 1B1.13 and makes the Commission's compassionate release policy binding.  Under Amendment 814, effective November 1, 2023, a defendant is now authorized to file a motion under 18 U.S.C. Section 3582(c)(1)(A).

Amendment 814 also expands and modifies the categories of "extraordinary and compelling reasons" that may warrant a sentence reduction under 18 U.S.C. Section 3582(c)(1)(A), as follows: (1) additional 'Medical Circumstances' subcategories; (2) modified Family Circumstances category; (3) new 'Victim of Abuse' category; (4) modified 'Other Reasons' category; and (5) new 'Unusually Long Sentence' category. U.S.S.G. Section 1B1.13(b)(Nov. 1, 2023).  *Hignicio-Castillo*, *supra.*

The First Step Act's amendment of 18 U.S.C. § 3582 ("Section 3582") provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (2) in any case—
>
> (B) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction; . . . and

>    that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

In order to obtain judicial relief, inmates are required to exhaust administrative remedies. *United States v. Raia,* 954 F.3d 594, 595 (3d Cir. 2020) (noting that Petitioners "must at least ask the Bureau of Prisons (BOP) to [file a motion] on their behalf and give BOP thirty days to respond."). One of the chief reasons "for requiring prisoners to exhaust their administrative remedies is to give the BOP the opportunity to address the issue[s]." *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 4, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To properly exhaust administrative remedies, "the administrative complainant must raise the same claims asserted in the federal court filing." *Id.* (citing *Garda-Lord v. Doe*, 736 F. App'x 30, 32 (3d Cir. 2018) (prisoner failed to exhaust administrative remedies even though he filed numerous prison grievances because none addressed the subject of the federal complaint)).

Petitioner bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A)(i). *United States v. Grasha*, Crim. No. 18-325, 2020 WL 5747829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a defendant may file a Section 3582(c)(1)(A) motion with the Court. As explained by the Court of Appeals for the Third Circuit in *United States v. Harris,* 812 Fed. App'x. 106 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the defendant may file the motion [for compassionate release pursuant to Section 3582(c)(1)(A)] thirty days after the warden receives his request." *Harris,* 812 Fed. App'x. at 107.

### III. *Discussion*

In Defendant's current (Second) Motion for Compassionate Release, he seeks a sentence reduction from his current sentence of life imprisonment to a sentence of time served and/or a reduction of sentence with supervised release to follow. In support thereof, Defendant advances several arguments.

Defendant claims in his current (Second) Motion for Compassionate Release that he has "stage 2" hypertension that is not being adequately treated and it constitutes an extraordinary and compelling reason under Section 1B1.13(b)(1)(C) justifying his compassionate release. Doc. 412 at 8. Defendant further claims that the sentence he is serving is "unusually long" and is an extraordinary and compelling reason for release under Section 1B1.13(b)(6). Id. at 16. Defendant argues that he is entitled to release because he helped his ill inmate in a life-threatening situation by summoning aid. Id. at 12. He further claims that the enhancement established by Section 2D1.1(b)(1) was erroneously applied to his sentence. Id. at 14.

The Government disputes all of Defendant's alleged basis for relief citing lack of merit regarding the first two arguments and lack of jurisdiction/preservation of these claims regarding the second two arguments. More specifically, the Government counters that Defendant's claims concerning the adequacy of the care being provided for his hypertension and the length of his sentence were raised in Cole's administrative request and are properly before the Court, but are without merit. (Def. Exh. A). The Government further contends that the application of the Section 2D1.1(b)(1) enhancement and the aid he provided a fellow inmate were not raised in the administrative request and have not been administratively exhausted but are also without merit. *United States v. Jeffries*, 2021 WL 2000555, at *5 (W.D. Pa. May 19, 2021) ("The exhaustion is strictly construed, and courts within the Third Circuit hold that 'issue exhaustion' applies to §

3582(c)(1)(A).") (collecting cases).  The Government explains that none of the above arguments constitute compelling and extraordinary reasons for Defendant's release.

Defendant posits that the above factors constitute extraordinary and compelling reasons to justify his release.  Defendant further contends as he did in his prior (First) Motion for Compassionate Release that the Section 3553(a) factors compel his release, because he has a low likelihood of recidivism, has been rehabilitated, and has displayed exemplary and heroic behavior while incarcerated.

### A. Defendant Has Sufficiently Exhausted His Administrative Remedies

The parties agree that Defendant has exhausted his administrative remedies with regard to his first two arguments, but not with regard to the second two arguments in his current Motion for Compassionate Release. In Defendant's Reply, he highlights the portions of the administrative record where he raised these issues, albeit under the rubric of an unusually long sentence.  Doc. 412-1.  The Court finds that Defendant has properly and adequately exhausted his administrative remedies.

### B. Merits Analysis of Defendant's Compassionate Release Motion

Having reviewed the merits of Defendant's Compassionate Release Motion, Defendant's request for relief will be denied because: (1) Defendant has not established by a preponderance of the evidence that an extraordinary and compelling reason exists for his term of life-imprisonment to be reduced; and (2) Defendant's release would not be appropriate upon consideration of the factors set forth in 18 U.S.C. § 3553(a).

> 1. *Defendant has not established an extraordinary and compelling reason to reduce his term of incarceration.*

The reasons Defendant asserts in support of his Compassionate Release Motions, either alone or in combination, are not extraordinary and compelling reasons for his sentence to be reduced to time served and/or a reduced sentence.

> *a. Defendant's medical conditions do not constitute extraordinary and compelling reasons to justify release at this time.*

Defendant claims that his "stage 2" hypertension is not being treated appropriately, and that has been unable to receive the critical, consistent and readily available treatment for his hypertension (both alone and in combination with his other well documented medical conditions). According to Defendant, this lack of consistent care leaves him at risk for serious deterioration of his health or death within the meaning of Section 1B1.13(b)(1)(C), and therefore, justifies his release into the community where he will obtain private health insurance and will perform regular self-monitoring. Defendant posits that this condition, either by itself, or with other factors outlined in his Motion constitutes mitigating factors under Section 3553, to support his release at this time.

This Court previously analyzed Defendant's hypertensive condition (in 2022) in his First Motion for Compassionate Release and found that his medical conditions did not justify his release, albeit in the context of the COVID-19 pandemic. See, e.g., *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("commonplace" conditions of hypertension and hyperlipidemia are not extraordinary); *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (same); *United States v. Nesbitt*, 2020 WL 3412577, at *4 (E.D. Pa. June 22, 2020) (Bartle, J.) (ordinary hypertension does not justify release); *United States v. Daniels*, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (Schiller, J.) (same); *United States v. Tartaglione*, 2020 WL 3969778, at *6 (E.D. Pa. July

12

14, 2020) (Slomsky, J.) (hypertension and hyperthyroidism, if presented by 64-year-old, "are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19."); *United States v. Martines*, 2021 WL 427285, at *2 (E.D. Pa. Feb. 8, 2021) (Kearney, J.) (hypertension of 67-year-old is not a sufficient risk factor); *United States v. Williams*, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020) (Pratter, J.) ("Although the CDC recognizes that having certain other conditions, including hypertension or high blood pressure 'might be at an increased risk,' hypertension is not considered high risk at this time."); *United States v. Ackerman,* 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (Marston, J.) ("Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.") (citing cases); *United States v. Syed*, 2020 WL 5995053, at *5 (M.D. Tenn. Oct. 9, 2020) (Richardson, J.) (even after six months the CDC continues to state that hypertension only "might" present a risk; the court therefore "concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release."); *United States v. Thomas*, 2020 WL 3895781, at *3 (W.D. Va. July 10, 2020) (Urbanski, J.) ("During the pandemic, courts in this district and across the country have released individuals suffering from hypertension, but only when these individuals also suffered from other underlying medical conditions."); *United States v. Colbert*, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (Cleland, J.) ("Hypertension, a condition that affects about 46% of the U.S. adult population, high cholesterol, and having had prostate cancer in the past are not 'extraordinary and compelling' conditions.").

Under Section 1B1.13(b)(1)(C), in order to show an extraordinary and compelling reason for release, an inmate must demonstrate that he is "suffering from a medical condition that requires long term medical condition that requires long term or specialized medical care that is

13

not being provided and without which the defendant is at risk of serious deterioration in health or death." While Defendant's medical records certainly reflect that he has hypertension, that appears to have progressed over the last few years, the records provided no diagnosis that Cole has stage 2 hypertension. Doc. 419-1. Defendant's medical records reflect that he is prescribed six medications, including treatment of his hypertension and that his health is periodically monitored. Doc. 419-1 at 6; Doc. 420-1. The records also indicate that when Defendant properly treats by taking these medications, his blood pressure is within the "elevated" range. Doc. 419-2 at 16; Doc. 412-5; Doc. 416; Doc. 420. With the filing of Defendant's affidavit, there appears to be a factual dispute regarding whether Defendant refused his medications at some point over the last several months, and whether he has refused weekly blood pressure checks. Doc. 426-2. While recognizing this factual dispute, the medical records themselves do not reveal that Defendant's blood pressure is so uncontrolled as to not be manageable from an institutional perspective. Additionally, as the Government explains and this Court agrees, Defendant provides no evidence that he is at serious risk of deterioration or death. *See United States v. Lee*, 2024 WL 1508826, at *5 (E.D. Mi. Apr. 5, 2024) (medical claim was insufficient where inmate failed to provide "evidence that any of his condition placed him at 'risk of serious deterioration or death.'").

The Court finds that Defendant's medical conditions, even when combined with other health conditions, his age, and other mitigating factors, either alone or in combination, do not constitute an extraordinary and compelling reason for release.

> *b. The length of Defendant's sentence does not constitute a compelling and extraordinary reason for his release.*

Defendant contends that he is entitled to a reduction of sentence/compassionate release because his sentence is an "unusually long sentence." Defendant's reliance on Section

14

1B1.13(b)(6) as a basis for compassionate release is misplaced because he does not qualify relief under that subsection.

Under Section 1B1.13(b)(6), a recent amendment to the Sentencing Guidelines suggests that "an unusually long sentence" can constitute a compelling and extraordinary basis for compassionate release where: (1) a defendant has served at least ten years; (2) there has been a nonretroactive change in the law; and (3) the current sentence would be grossly disproportionate to a sentence that would likely be imposed today because of the nonretroactive change in the law. U.S.S.G. § 1B1.13(b)(6).

Even accepting Defendant's albeit doubtful position that he would be sentenced to a time period less than life, if the Court were to sentence Defendant today, the Court is mindful that the current law on this issue within the United States Court of Appeals for the Third Circuit is that non-retroactive changes in the law cannot constitute an extraordinary and compelling reason for release.

Notably, the language of the United States Sentencing Guidelines, Section 1B1.13(b)(6) seems to be incongruous with the ruling of the United States Court of Appeals for the Third Circuit's holding in *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021). In *Andrews*, the United States Court of Appeals for the Third Circuit held that nonretroactive changes in the law cannot constitute an extraordinary and compelling reason for compassionate release.

Recently, in *United States v. Carter*, --- F.Supp.3d--, 2024 WL 136777, at *6, (E.D. Pa. Jan 12, 2024), the United States District Court for the Eastern District of Pennsylvania, after noting that in *Andrews*, the Court of Appeals for the Third Circuit interpreted the text of Section 3582(c)(2), held that Section 1B1.13(b)(6) was inconsistent with *Andrews,* and that the

Sentencing Commission lacked the "'authority to amend the statute [the court] construed' in a prior case." (*quoting Neal v. United States*, 516 U.S. 284, 290 (1996)).

As the Government points out, colleagues here in the Western District of Pennsylvania have similarly adopted the reasoning of *Carter* and have held that Section 1B1.13(b)(6) of the Sentencing Guidelines is incompatible with *Andrews* in the context of Motions for Compassionate Release. *See United States v. Johnson*, 2024 WL 964710, at *6 (W.D. Pa. Mar. 5, 2024); *United States v. Barton*, Crim. No. 20-101 (Doc. 86). The open question of whether the policy statement of the Sentencing Commission abrogates the rulings in *Andrews,* will presumably be answered when the United States Court of Appeals resolves the case of *United States v. Rutherford*, No. 23-1904, which is currently on appeal and was orally argued on June 27, 2024.

In the meantime, this Court will adopt the reasoning of *Andrews, Johnson,* and *Barton,* will decline to follow the ruling of the Court in *United States v. Skeeters*, 2024 WL 992171 (E.D. Pa. March 7, 2024), and will find that a non-retroactive change in the law cannot constitute an extraordinary and compelling reason for release. Thus, Defendant's Motion in this regard is denied.

> c. *Defendant's claim that the firearms enhancement was wrongfully applied to his Sentencing Guidelines is without merit.*

Defendant now contends that the application of the firearms enhancement authorized by U.S.S.G. § 2D1.1(b)(1) was erroneously applied to his Sentencing Guidelines. Doc. 412 at 14-15. He asks this Court to revisit the rulings of the Court during sentencing proceedings. Specifically, Defendant asks the undersigned, who was not the sentencing judge, to reexamine the application of an enhancement relating to the assault of Defendant's sister, Saundra Cole, with a firearm for allegedly stealing cocaine from Defendant, which was the subject of testimony

16

by one of Defendant's assistants, Thomas Gilliam, during the sentencing phase of the proceedings. Defendant now introduces an affidavit by his sister Saundra Cole, with whom he proposes to live upon release, that purports to demonstrate that the enhancement was wrongfully applied. However, since the sentencing hearing on March 10, 2006, Defendant missed opportunities to raise these allegations, when they could have been fairly resolved. Defendant could have properly raised this issue in the context of a Motion to Vacate sentence. He did not do so. Defendant unsuccessfully raised the application of Section 2D1.1(b)(1), on direct appeal, although not in the context asserted here (there was no assertion of any conflicting affidavit by Defendant's sister). Doc. 281-2. Defendant did not advance a challenge to its application in his motion to vacate, which would have been an appropriate time to do so. Doc. 288. *See United States v. Thornton*, 2022 WL 3134221, at *2, n.3 (3d Cir. Aug. 5, 2022) ("To the extent Thornton argues that he is entitled to compassionate release because of alleged trial and sentencing errors, he essentially presents another challenge to the validity of his conviction and sentence, and such challenges are typically brought under 28 U.S.C. § 2255.") (citation omitted). Additionally, as the Government notes, Defendant's sister in fact testified at the sentencing hearing and did not address or dispute the allegations of alleged assault by Defendant, which would seem to contradict or undermine her current affidavit, sworn 20 years later. Doc. 412-10. It is not the role of this Court at this stage of these proceedings to relitigate the judgment of the sentencing court with allegedly conflicting testimony and to base a decision to grant Defendant's Motion for Release on this new version of events (as mitigating evidence), which could have been raised decades ago.

> *d. Defendant's record of good deeds and exemplary behavior, while commendable, is not an extraordinary and compelling reason for release.*

Defendant's cellmate suffered a life-threatening loss of breathing and thankfully Defendant acted quickly and summoned help, allegedly at the risk of ostracization because inmates are not supposed to summon guards.  Doc. 412; Doc. 425.  While Defendant is to be commended for his decent and charitable act, performing a decent and humane act does not justify his release.  And, while the Court is aware that Defendant has a history of good behavior, with very few disciplinary infractions, this is presumably the reason why Defendant has been placed at a medium security prison, as the affidavit of Mr. Jack Thomas Dodson (former correctional treatment specialist and BOP coordinator) details.  Doc. 425-3.  Defendant's rehabilitation and low recidivism score was analyzed and addressed in the Court's prior Memorandum Order on his First Motion for Compassionate Release in the context of analysis of the Section 3553(a) factors, and the Court held at that time that Defendant had served less than 20 years of a life sentence and his rehabilitation does not justify release because it would not be a just punishment for his reprehensible criminal conduct.  This Court echoes its prior sentiments and continues to so find, albeit now in the context of a "minimum" recidivism score.

> 2.   *An application of 18 U.S.C. § 3553(a) factors does not support release of Defendant at this time.*

Upon review of the applicable Section 3553(a) factors to determine if a reduction in sentence pursuant to Section 3582(c)(1)(A) is appropriate in this case, the Court finds that granting Defendant's request for a sentence reduction pursuant to Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13 is not warranted, due to: (1) the very serious nature and circumstances of Defendant's offenses; (2) the need to protect the public from further crimes of Defendant; and (3) most significantly, the need for the sentence imposed "to reflect the seriousness of the

18

offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). In this Court's prior Memorandum Order on Defendant's First Motion for Compassionate Release, the Court conducted a similar analysis which is recited herein. Doc. 378.

Although this Court did not preside over the criminal trials of Defendant, the Court is well familiar with the facts of this case, which also have been summarized by the Government and have been previously quoted by the Court in its prior Memorandum Order on Defendant's (First) Motion for Compassionate Release, as follows:

> Defendant was the leader of a large-scale cocaine trafficking organization in Western Pennsylvania, which operated from 1991 through the middle of 2003. This organization was responsible for the distribution of at least 3000 kilograms of cocaine, which was transported to Pittsburgh from New York and California, by means of hidden compartments in cars driven from New York to Monroeville and Hazelwood, Pennsylvania. Defendant retained portions of the shipments and then distributed to his top assistants, and then to his brokers. The wholesale value of the 3000 kilograms was an astonishing value of approximately $60 million.
>
> Suffice it to say, Defendant distributed drugs through a vast network, thus, negatively impacting countless lives here in the Western District of Pennsylvania, and elsewhere, a fact also found by the Sentencing Court. During the trials, lower ranking members of the drug conspiracy testified against Defendant. There was also testimony that Defendant attempted to intimidate witnesses not to cooperate against him, that Defendant had a reputation for violence, and that he laundered his profits through trips to Las Vegas and Atlantic City casinos. Defendant was a drug kingpin for more than a decade, and the trials evidenced, in graphic detail, the extent of his criminal conduct and culpability. Simply put, the magnitude of the offenses, enhances the need to punish and the need to deter, as the Government emphasizes, and this Court agrees, Defendant's reprehensible criminal conduct has left the streets of Western Pennsylvania awash in drugs.

Doc. 378.

Despite Defendant's extensive efforts and success in the realm of rehabilitation, the extremely serious nature of Defendant's crimes does not necessitate release at this time, because rehabilitation is expected of all individuals who are sentenced before this Court, and alone

cannot constitute an extraordinary and compelling basis for compassionate release. 28 U.S.C. § 994(t).

*IV. Conclusion*

For all the above stated reasons, Defendant's (Second) Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 is DENIED.

                              SO ORDERED this 12th day of August, 2024.

                              s/Arthur J. Schwab
                              Arthur J. Schwab
                              United States District Judge

cc:     All ECF Registered Counsel of Record